SANDERS *v.* OMOHUNDRO.

4-6905                                      166 S. W. 2d 657

Opinion delivered December 14, 1942.

*House, Moses & Holmes,* for appellant.

*Carmichael & Hendricks,* for appellee.

GRIFFIN SMITH, C. J.   The appeal is from a decree directing W. B. Sanders to comply with his written contract of April 21, 1942, to purchase ninety-one feet of land fronting west on Pulaski street in Little Rock. Sanders says he is anxious to consummate the transaction, but that Mrs. L. S. Omohundro, who agreed to supply an abstract showing a marketable title, has defaulted in that Gladys Shader, who inherited the property from her father, and in whom title is conceded to have been good, was insane in 1939 when Mrs. Omohundro purchased from a so-called guardian.

Invalidity of the sale to Mrs. Omohundro is based upon the following grounds: (a) Action of Pulaski probate court in appointing a guardian was void, and (b) the proceedings may be collaterally attacked. (c) The guardian's attempt to sell was ineffectual because a commissioner appointed by the court, as distinguished from the guardian, made the sale, and (d) the lots were exchanged for other property; also, (e) the court's direction to sell and its order of confirmation were within the same term. (f) Confirmation was not complete. (g) An order, *nunc pro tunc*, whereby it was sought to cure a defective commitment of 1914, was void.

In January, 1914, David R. Clark, who termed himself "attending physician" at St. Joseph's Retreat, Dearborn, Mich., addressed a letter "To whom it may concern," certifying that Gladys Shader was mentally ill. It was the writer's opinion the patient was incapable of caring for her person or property. Appointment of a guardian, he said, was "necessary and essential."

February tenth of the year in which the Clark letter was written, Mrs. Eleanor F. Shader (Gladys' mother) petitioned Pulaski probate court for appointment as guardian, in consequence of which such designation was made in an order dated four days subsequent to the petition. Bond was executed.

May 10, 1935, complying with prayers of a petition for "clarification of the record" and an order, *nunc pro tunc*, the probate court entered its judgment finding that Gladys was then confined in St. Joseph's Retreat; that the institution was an asylum for the insane within the meaning of Act 77 of 1905, and that the patient's mental status was such that appointment of a guardian was imperative. Gladys was found to be a resident of Pulaski county.[1]

Essential difference between the judgment of 1914 and that of 1933 was that the prior judgment did not

---

[1] A recital is: "And it being further shown that [the finding presently made] was the judgment of the court made February 10, 1914, but by clerical misprision or oversight not so entered, it is entered now for then and with the same force and effect as if it had been entered in this form at the time."

show on its fact/ what is conceded to be a fact—that Gladys was a citizen of Pulaski county in 1914 and in 1935; also, the order of 1914 did not disclose the nature of the Dearborn institution.

Argument is that there was want of due process when in 1914 a judgment appointing a guardian was rendered without requiring that Gladys be brought into court. The same vice, it is said, appears in the order of 1935. Attention is directed to § 7546 of Pope's Digest, where it is provided that if anyone shall give information in writing to the probate court that a person in the county is of unsound mind, and shall pray that an inquiry be had the court, if satisfied there is good cause for the exercise of its jurisdiction, shall cause the person so charged to be brought before it, "and inquire into the facts by a jury, if the facts be doubtful."

Section 7553 of the Digest directs that if it be found by the jury that the person "so brought before the court" is of unsound mind, or incapable of managing his own affairs, a guardian shall be appointed.

Appellee, however, relies upon § 7554 of the Digest, which is § 1 of Act 77 of 1905, p. 198. The provision is that in respect of a person of unsound mind who is confined in an asylum for the insane within the state, "or in any institution or asylum for the insane outside of the state," the probate court of the county of which such insane person is a citizen shall have power to appoint a guardian ". . . without requiring the presence of such person before the court." [2]

Appellant's contention is that § 7554 is constitutional only in those cases where commitment has been by appropriate proceedings after due notice, and after the subject whose rights are being dealt with has been brought before the court.

In construing § 7546 of Pope's Digest (§ 5829 of Crawford & Moses' Digest), it has often been held that presence of the person alleged to be insane is a prerequisite to the jurisdiction, and an order appointing

---

[2] See Act 108, approved February 17, 1937.

a guardian must affirmatively show such fact. *Monks* v. *Duffle*, 163 Ark. 118, 259 S. W. 735.

Appellant cites *Hyde* v. *McNeely*, 193 Ark. 1139, 104 S. W. 2d 1068, where it was adjudged that the probate court of Desha county did not have jurisdiction to inquire into the sanity of a person who was not before the court. The decision, however, was in a case where the person alleged to be insane had not been committed to an institution, and § 5829 of Crawford & Moses' Digest was applicable, as in the Monks-Duffle case.

In *Payne* v. *Arkebauer*, 190 Ark. 614, 80 S. W. 2d 76, the holding was that an order adjudicating a person to be insane, such person not being before the court, was not void on its face for want of due process, even though made without notice. The reason was that the adjudication could be appealed from.

Chief Justice McCulloch, speaking for the court in *Sharum* v. *Meriwether*, 156 Ark. 331, 246 S. W. 501, said that refusal of the probate court to inquire into the facts of insanity by a jury, if the facts be doubtful, and a finding without such inquiry, did not render the judgment void, although it was an abuse of discretion appearing on the face of the record, and such an abuse as would have invalidated the proceeding on appeal. ''Jurisdiction,'' says the opinion, ''is acquired by the filing of information with the court and the compulsory attendance of the accused before the court, and the proceedings which follow constitute the exercise of the jurisdiction thus acquired. The ordering of a jury is done in the exercise of that jurisdiction, and it does not defeat the jurisdiction of the court because there is an erroneous exercise of it in the proceeding. The error must, as before stated, be corrected by appeal.'' [3]

The second headnote to *Payne* v. *Arkebauer* as shown by the Arkansas Reports, assumes the decision

---

[3] The cause reached the Supreme Court on appeal from a judgment of the Lawrence circuit court where there was refusal to issue a writ of certiorari to bring up for review a judgment of the probate court declaring the appellant to be a person of unsound mind and appointing a guardian of his person and for his estate.

held that a person charged with insanity must be present when a guardian is appointed, "but need not be present in a proceeding for commitment to State Hospital for Nervous Diseases." In the opinion attention is called to § 5829 of Crawford & Moses' Digest, taken from the Revised Statutes, and to Act 19, approved Feb. 17, 1883, the latter providing for admission of insane persons to asylum. It was then said that each statute is complete in itself, ". . . and the Acts are for wholly different purposes." But in another paragraph there is this language: "As we have already stated, there are two separate statutes dealing with insane persons. One is the statute to which attention has been called in the Revised Statutes. In the proceedings under this statute it is necessary to have the party present in court, but this is a proceeding for the appointment of a guardian."

There is no reference to § 5837 of Crawford & Moses' Digest, (now Pope's § 7554) and since the question of appointing a guardian was not involved in the Payne-Arkebauer case, the comment could only relate to rights contended for or limitations invoked under § 5829 of Crawford & Moses' Digest."

In determining whether the judgment naming Mrs. Shader guardian was void, *Scott* v. *Stephenson,* 168 Ark. 763, 271 S. W. 714, is very much in point. After a decree had been rendered by the Drew chancery court finding that the appellant had failed to deliver to Guy Stephenson property valued at more than $14,000, the losing party moved to vacate because, as it was urged, the probate court was without jurisdiction to appoint Stephenson guardian. While the motion was pending the probate court made an adjudication to the affect that Ruth Harris was a person of unsound mind, and that she was then confined in a sanitorium in Ohio. Stephenson was reappointed guardian.

The appellant relied on *Monks* v. *Duffle, supra,* the holding there being, as we have heretofore shown, that the probate court is without jurisdiction to pass upon the sanity of an accused unless the party whose rights

are involved is before the court. While declining to pass upon the validity of Stephenson's appointment as guardian and the finding of insanity (this because the decree was upheld upon other grounds), there was this statement:

"Of course, the right to enforce the decree in the name of the guardian is affected by the question of the validity of his appointment, but the question of the enforcement of the decree is not involved in this appeal, and, besides that, it has become entirely moot, for the reason that, since the question was raised by a motion to vacate the decree below, there has been a valid adjudication of the insanity of Ruth Harris and another appointment as guardian." After quoting § 5837 of Crawford & Moses' Digest, (Pope's § 7554), the opinion continues:

"When the last order was made reappointing the guardian for Ruth Harris, she was, according to the undisputed proof, in an asylum or sanatorium for the care and treatment of insane persons outside of the state, and the presentation of a petition to the court conferred jurisdiction to hear and determine the question of insanity." [4]

While the opinion mentions that Ruth Harris was not confined in the insane asylum of this state, the statute expressly provides for proceedings where confinement is in *the* state asylum, . . ."or in any institution or asylum for the insane outside of the state." The reasonable construction to be placed upon *Scott v. Stephenson* is that when a petition is filed, the probate court acquires jurisdiction to appoint a guardian. Insanity is presumed from the fact of confinement in an asylum. The proceeding is not according to the common law. Due process is not lacking.

The order "now for then" found that Gladys Shader, on May 10, 1935, was a citizen of Pulaski county

---

[4] There was this additional statement: "If there was any fraud practiced upon the court or upon the insane person by causing her to be removed from the state, so that the court could acquire jurisdiction, that could be shown in a direct attack to set aside the judgment of the probate court or by an appeal in apt time from the order."

confined in a Michigan asylum for the insane. There was also appointment of a guardian. Whether the judgment was valid as a finding, *nunc pro tunc*, (and we think it was) is not controlling. The same guardian was appointed, and the former appointment was confirmed. If in fact the matters recited in the order were determined by the court in 1914, but through clerical misprision omitted from the recorded judgment, the prior adjudication was valid. There is nothing to dispute the finding except absence from the record of an affirmative recital. Action was similar to that pursued in the Scott-Stephenson case after motion to vacate the chancery decree had been made, but before it was passed upon.    . . .

That a commissioner appointed by the court made the sale is immaterial. The order of confirmation shows that Mrs. Omohundro was purchaser ". . . for $5,000 par bonds of Lafayette Hotel Company and $400 in cash." Immediate payment was made. Proceeds were delivered to the guardian, who was directed to execute a deed, and this was done. The guardian does not complain that she was not permitted to make the sale. In truth, the arrangement seems to have been one of convenience, for the benefit of Mrs. Shader as guardian, who no doubt was not experienced in conducting public sales.

The transaction was not an exchange of property. Whether securities of the hotel company were of sufficient value to justify their acceptance was for the court to determine. The guardian did not complain; hence, a presumption arises that the sale was satisfactory. A statement in the order of confirmation that the bonds and $400 in cash "given in exchange were worth as much as the land" did not convert the sale into an exchange except to the extent that money and bonds having a determined value were exchanged for the title. In short, it was a form of payment approved by the court, accepted by the guardian, and presumptively the equivalent of money. *Robertson* v. *Cooper,* 154 Ark. 5, 241 S. W. 50, has no application.

While confirmation did not follow the statute in the strictest sense, this is a collateral attack, and mere irregularities or errors in procedure cannot be reached.

The decree is affirmed.